```
                                        FILED
                                    U.S. DISTRICT COURT
                                    
                                    2000 JUN -8  P 4: 03
```

MINUTE ENTRY
June 8, 2000
SCHWARTZ, J.

| | |
|---|---|
| RIDGELAKE ENERGY, INC | CIVIL ACTION |
| VERSUS | NO. 00-0105 |
| BAKER HUGHES OILFIELD OPERATIONS, INC. d/b/a BAKER OIL TOOLS and/or BAKER OIL TOOLS, INC. | SECTION "A" |

Before the Court is a Motion for Summary Judgment and Alternatively to Stay Proceedings Pending Arbitration, which Baker asks the Court to reconsider in the light of the additional evidence of its history/course of dealings with Ridgelake, along with additional authorities. Baker Oil Tools ("Baker's") Motion for Reconsideration was formally opposed by the plaintiff Ridgelake Energy, Inc. ("Ridgelake"). The Court previously denied Baker's motion finding material issues of fact regarding an agreement to arbitrate in the context of a master service contract in connection with the Main Pass 41 Project. However, and as Baker aptly points out, efforts to negotiate a subsequent Master Service Agreement were abandoned. The contracts at issue are pursuant to Baker's

DATE OF ENTRY
JUN - 9 2000

1

Standard Terms and Conditions, with which Ridgelake is quite familiar.

On reconsideration, the Court finds that the operative contracts, which govern the rights and liabilities of the parties and pursuant to which Ridgelake sued Baker each contain an unambiguous arbitration provision. For the following reasons, the Court is of the opinion that this suit should be stayed and marked statistically closed pending arbitration.

The record before this Court, now complete with historical evidence of parties course of dealings over a significant period of time, admits no genuine issue of material fact that Ridgelake received and was well aware of Baker's Standard Terms and Conditions which contain the unambiguous arbitration provision issue. No reasonable trier of fact could find otherwise based upon the undisputed facts and circumstances and the history of the parties' course of dealings.

The law is clearly to the effect that whether or not Ridgelake read the arbitration provision is of no moment. Ridgelake's claims against Baker sound in contract. The Sales and Service contracts were entered pursuant to Ridgelake's invitation to submit bids and Baker's bid proposal issued pursuant to its Standard Terms and Conditions as was customary. Baker's Standard Terms and

Conditions were reiterated in the Sales and Service Tickets with respect to completion of oil and gas wells on Ridgelake's Main Pass 41 Project.[1] Ridgelake's suit is in fact predicated on these very contracts (i.e., the Sale and Service Tickets) which reiterate Baker's Standard Terms and Conditions, including its standard arbitration clause.

The Court finds the authorities cited by movant and additional documentation regarding the parties' course of business dealings compelling. Ridgelake cannot dispute its documented history of business dealings with Baker pursuant to the very same Terms and Conditions.[2] The case law is clearly to the effect that whether

---

[1] See, Actual copies of Baker/Ridgelake Sales and Service Tickets for the completion of oil and gas wells on the Main Pass 41 Project. [Baker's Reply Exhibit "B"].

[2] It is undisputed that Baker submitted its Standard Terms and Conditions with its Bid Proposal to John Rubin, of Ridgelake. Baker's Reply Exhibit A1, Tab 5. At paragraph 17, the Baker Oil Tools' Terms and Conditions provide:
17. ARBITRATION
Any controversy, claim or dispute arising out of or relating to this Agreement, or its breach, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules for the American Arbitration Association which are in effect at the time arbitration proceedings are initiated. That parties agree that the arbitration shall be governed by the laws of Oklahoma, excluding any conflicts of law and choice of law principles. The arbitral tribunal shall consist of three arbitrators who shall be experienced in the oil and gas industry. The arbitration hearing shall occur in Houston, Texas, and the language of the hearing shall be in English. Judgment upon the award rendered by the

construed under federal or state arbitration law, the intentions of the parties must be "generously construed in favor of arbitrability." McKee v. Home Buyers Warranty Claims, 45 F.3d 981, 985 (5th Cir. 1995).[3]

It cannot be seriously disputed in this case that Baker and Ridgelake reached an agreement regarding the equipment delivered to Ridgelake's project site and services performed at Ridgelake's project site by Baker.[4]

It was Ridgelake which initially sought the bids from Baker for equipment and services necessary in connection with the completion drilling of Ridgelake's wells, including wells 1 and 4

---

arbitrators shall be final and binding on the parties and may be entered in any court having jurisdiction thereof. Each party shall be responsible for its own costs, expenses and attorney's fees. The parties shall share equally the fees and expenses of the arbitrators....

[3]In McKee, finding the home buyers' state law arguments netted them nothing, the Fifth Circuit noted that:
> First, the policy favoring arbitration is not exclusively federal; both federal and state jurisprudence dictate that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration.[citations omitted]. Second, if we construe warranty according to Louisiana law, it unambiguously calls for binding arbitration.

[4]See, Baker's Sales and Service Tickets which included the Baker's Standard Terms and Conditions. (Baker's Reply Exhibit B in globo).

4

in the Main Pass 41, Block 59 area. Baker responded, including as was customary, its "Standard Terms and Conditions," which contain an arbitration provision. [Baker Exhibit 1A, para. 17]. Throughout the work Baker provided Ridgelake various quotes for additional equipment and services, as was customary and just like the original bid, these quotes were also made pursuant to Baker's Standard Terms and Conditions. The same Standard Terms and Conditions were also included on the Sales and Service Tickets which accompanied services performed and equipment delivered to Ridgelake at its Main Pass 41 Project site. [Baker Exhibit 1B].

These were the same Sales and Service Tickets Baker customarily issued in connection with its usual course of business dealings with Ridgelake and as in other projects, the Sales and Service Tickets complete with standard provisions accompanied the goods and services Baker sent to Ridgelake at its Main Pass 41 Project jobsite. Although the parties attempted to negotiate a Master Service Agreement with respect to the subject project prior to the acceptance of goods and services pursuant to the Sales and Service Tickets at issue, no such Master Agreement was ever consummated, and the efforts in that vein were admittedly abandoned.

Cutting to the quick, the dispositive issue in this case is whether the parties' agreement regarding the pertinent sales which were consummated and service which was in fact performed included the agreement on arbitrate. In this determination, the Court simply cannot ignore the clear wording of the contracts which the plaintiff Ridgelake put at issue in this case or Ridgelake's documented course of dealings with Baker. The Sales and Service Tickets at issue, which throughout Ridgelake's history of business dealings with Baker included Baker's Standard Terms and Conditions, were signed for Ridgelake, the owner, at its Main Pass 41 Project site. Directly above the signature line on each Sales and Service Ticket was the following written provision:

> I certify that the above materials or services have been received on the terms and conditions set forth on the reverse side hereof, which the undersigned has read and understood, that the basis for charges is correctly stated and that I am authorized to sign this memorandum as agent of owner or contractor. (Baker's Reply Exhibit B *in globo*).

Also, printed in capital letters at the top of each signed Sales and Service Contract is the following statement:

> NOTICE: **THIS AGREEMENT CONTAINS RELEASE, INDEMNITY, DEFENSE, AND ARBITRATION PROVISIONS** (emphasis supplied).

In the case at bar it is manifest that the parties share a history of business dealings which involved standardized

provisions. More specifically, Baker's Standard Terms and Conditions including Sales and Delivery Tickets complete with such standard provisions, were historically a part of Baker's business dealings with Ridgelake. Ridgelake's Main Pass 41 project was no exception.

A party such as Ridgelake cannot be permitted to retain the benefits received under contracts, sue pursuant to such contracts, and at the same time escape the obligation to arbitrate imposed by such contracts. The Sales and Service Tickets which accompanied Baker's equipment and services provided to Ridgelake and accepted on behalf of Ridgelake at its Main Pass 41 Project all contained the arbitration clause at issue.

Under Louisiana law, the intent of the parties to a contract may be construed from the face of the document, without considering extrinsic evidence, and judgment entered as a matter of law if the contract is unambiguous.[5] In the case at bar, considering the documented history of business dealings by and between Baker and Ridgelake, there is **no genuine issue** regarding the fact that

---

[5] See, McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981, 986 (5th Cir. 1995)(affirming the district court's order granting summary judgment determining that the warranty at issue was not ambiguous without considering changes to the arbitration provisions incorporated into warranties issued subsequently).

7

Ridgelake was fully aware of the arbitration clause in question, that such provision was set forth in Baker's Sales and Service Tickets, delivered to the project site along with goods and services provided, and that such provision was part and parcel of Baker's Standard Terms and Conditions.

It is noteworthy and bears reiterating that Ridgelake does not dispute that the Sales and Service Tickets are the only executed contracts evidencing the relationship of the parties. Goods and services delivered to the project and accepted on behalf of Ridgelake were accompanied by the subject Sales and Service Tickets and signed on behalf of Ridgelake.

Ridgelake's lawsuit against Baker sounds in contract and claims that Baker's equipment and services provided pursuant to these Sales and Service Tickets were defective. More to the point, Ridgelake's claims are predicated on contracts which provide for binding arbitration as the means of settling disputes with respect to goods and services provided. Essentially, Ridgelake seeks to hold Baker to its contractual warranties but to suspend the effect of the arbitration agreements contained in the very contracts it placed at issue in this lawsuit. The only standard provision Ridgelake seeks to repudiate is the arbitration clause.

Ridgelake finds itself sufficiently linked contractually to file suit in contract for defective the equipment and service provided pursuant to the sales and delivery tickets. Ridgelake's history of dealing with Baker is more than sufficient to imbue Ridgelake with the miasma of knowledge of the various standard term and condition which customarily punctuate its business dealings with Baker. The record before this Court, admits that the terms governing the rights and liabilities of the parties are embodied in Baker's Standard Terms and Conditions, and reiterated the Sales and Service Tickets. The standard arbitration provision set forth therein is unambiguous, and in the case of the Main Pass 41 Project, no superseding agreement was ever consummated.

The fact that Mr. Cangelosi was Ridgelake's representative charged with negotiating a Master Service Agreement with Baker in connection with the completion of oil and gas wells on the Main Pass 41 Project is of no moment. It is not disputed that Cangelosi's efforts to negotiate such a master service contract were abandoned as too time consuming. Baker therefore provided equipment and services as it customarily did pursuant to its "Standard Terms and Conditions," which standard provisions were reiterated in the context of the Sales and Service Tickets, signed on behalf of the owner at Ridgelake's project site.

Counsel for Ridgelake argues unconvincingly that a representative of Ridgelake did not sign the Sales and Service Tickets, *ergo* Ridgelake did not agree to the arbitration provision. Counsel's argument rings hollow in light of the documented extensive history of business dealings between the parties to this lawsuit, a course of dealing which included the utilization of Baker's Standard Terms and Conditions, as well as Baker's Sales and Service Tickets. Baker's Sales and Service Tickets issued in connection with Ridgelake's Main Pass 41 Project were identical to those utilized by Baker in connection with its prior dealings with Ridgelake. These Sales and Service Tickets were signed at Ridgelake's Project site **most apparently on behalf of Ridgelake**. They said so in no uncertain terms.

In any event, the law is clear that a nonsignatory to an agreement containing an arbitration clause may be treated as bound by the arbitration agreement under ordinary contract or agency principles, including principles of assignment or subrogation. In the case at bar, the claims Ridgelake asserts are derived from the terms of the Sales and Service Tickets/Contracts and its course of dealing with Baker pursuant to its Standard Terms and Conditions. No less than five theories for binding nonsignatories to arbitration agreements have been recognized by the courts: (1)

incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.[6] Ridgelake has not addressed one, whereas based on the undisputed facts it appears one or more apply in this case.

In Genesco, Inc. v. T. Kaiuchi & Co., Ltd., 815 F.2d 840 (2nd Cir. 1987), the Fifth Circuit upheld the district court's decision that there was a binding agreement to arbitrate based on **unsigned** purchase agreements. The Fifth Circuit explained that the district court did not err in finding that in this longstanding, on-going relationship Genesco agreed to arbitrate disputes under both signed and unsigned sales confirmation forms. Citing 9 U.S.C. § 3, the Genesco court explained that while the Arbitration Act requires a writing, it does not require that the writing be signed. Genesco, 815 F.2d at 846.[7] The court was not persuaded by Genesco's argument that it never specifically agreed to the arbitration agreements in sales confirmation forms and explained that such a position demonstrated that Genesco misapprehended the inquiry. The Fifth Circuit instructed:

---

[6]Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 776 (2nd Cir. 1995)

[7]See also, Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973)

> We focus not on whether there was subjective agreement as to each clause in the contract but on whether there was objective agreement with respect to the entire contract.

Id.

Applicable law is also to the effect that a party by its action or inaction, may ratify or may be estopped from denying ratification of an agreement on its behalf. In the case at bar, in connection with ongoing business dealings between Baker and Ridgelake, Baker's equipment and services were provided time and time again to Ridgelake at its Main Pass 41 Project site, and were accompanied in the usual course of business by Baker's Standard Form Sales and Service Tickets complete with Baker's Standard Terms and Conditions. Ridgelake cannot seriously deny in light of its extensive course of dealing with Baker, that Ridgelake knew these sales and delivery tickets were purported signed on its behalf and with its full authority to bind at Ridgelake's Project site.

Ratification is the adoption by one person of an act done on his behalf by another without authority. The principles of ratification were explained by the Louisiana First Circuit in Bamber Contracting Co., Inc. v. Morrison Engineering & Contracting Co., Inc., 385 So.2d 327, 331 (La.App. 1st Cir. 1980), as follows:

> Unless a principal expressly ratifies the acts of an agent who has exceeded his authority, the agent alone is bound. LSA-CC Arts. 3010, 3013, 3021.

12

> Ratification, in the law of agency, is the adoption by one person of an act does on his behalf by another without authority. The burden of proving ratification is on the party asserting it, and to find ratification of an unauthorized act, the facts must indicate a clear absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Ratification will occur when the principal, knowing of the contract, does not repudiate it but has accepted the benefits. [citations omitted].

385 So.2d at 660. While ratification is not a separate basis for establishing an agency relationship, it will broaden the scope of a previously established agency relationship. Id.

Therefore, acceptance of benefits of a contract by an entity such as Ridgelake evidences ratification. Also, the court notes that "[t]here is no requirement that some measurable benefit inure to the corporate principal from the unauthorized act." 3 A's Towing Co. v. P & A Well Service, Inc., 642 F.2d 756, 758-59 & n.3 (5th Cir. 1981).

Finally, and in addition to reasons previously discussed, the equity of the circumstances leads to the conclusion that Ridgelake ratified the sales/service contracts with Baker. To take the position a contractor's employee had the power to contractually bind Ridgelake to sales/service agreements worth "megabucks," and then only belatedly seek to avoid an obligation contained in one of the standard provisions of the agreement which would require

13

arbitration of claims after accepting the benefit of the contract.

It is undisputed that Ridgelake had agreements with Baker regarding the sale of equipment and providing service in connection with the completion of oil and gas wells on Ridgelake's Main Pass 41 Project.  These contracts are the ones Ridgelake seeks to enforce in the captioned matter.  There is nothing in the Sales and Service Tickets[8] at issue which suggests that Ridgelake did not intend to bound by their terms.  There was no attempt by Ridgelake thereafter, to repudiate any terms set forth in the Sales and Service Tickets.  Moreover, Ridgelake has sued Baker pursuant to those contracts.  The fact the sales and service tickets contain an arbitration agreement is noted on the face of each sales and service ticket.  Ridgelake has not and cannot plead fraud, misrepresentation, deceit, duress, or coercion considering the undisputed facts.[9]

---

[8]See, Baker's Reply Exhibit "B" in globo.

[9]There is no question but that Hines an employee of Ridgelake's contractor, at all pertinent times was acting for Ridgelake signing Baker Oil's Sales and Service Tickets and accepting the accompanying supplies and services provided by Baker to Ridgelake at its Main Pass 41 Project. Ridgelake accepted the benefits of the materials and services supplied. The record is unequivocally to the effect that services and materials supplied pursuant to Baker's Sales and Service Tickets were for the completion of oil and gas wells on **Ridgelake's** Main Pass 41 Project. These transactions benefitted Ridgelake. Ridgelake well-

The focus of the Court is not upon whether there was subjective agreement to all clauses in the underlying contracts. In the absence of allegations of fraud or duress, the proper focus of the inquiry is whether there was agreement to the contracts. Uncontrovertedly, there was agreement to the Main Pass 41 Project sales and service contracts. Ridgelake's suit is for defective equipment and service supplied pursuant to these very contracts.

From the foregoing, it appears that no genuinely disputed material issue of fact exists. The arbitration clause must be given effect. In other words, the contracts (i.e., the Sales and Service Tickets) each with Baker's standard arbitration provision stands unimpeached as part of the agreement of the parties. Ridgelake does not argue that its claims are outside of the scope of the arbitration clause and it does not assert that there is any external legal constraint that renders its claims unarbitral.

Ridgelake position is simply that notwithstanding the fact it agreed to all other terms and conditions and accepted the benefit of the contracts, it did not subjectively agree to arbitrate claims in connection with contracts. Its argument finds no support in the

---

knew that the Sales and Service Tickets disclosed or represented that the signatory's principal was Ridgelake. Ridgelake did nothing to discourage that notion.

well-documented record and the course of dealings between parties belies Ridgelake's position. The applicable law leads to the conclusion the case must be stayed pending arbitration.

Accordingly, on reconsideration

**IT IS ORDERED** that Baker Oil Tool's motion to stay pending institution of arbitration proceedings is **GRANTED**.

**IT IS FURTHER ORDERED** is that the Clerk of Court is hereby directed to statistically close the case.

------------

16